United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

C.D.,
Plaintiff,
v.
SSA COMMISSIONER,
Defendant.

Case No. 25-cv-09334-NC

**ORDER REMANDING CASE FOR FURTHER PROCEEDINGS**

Re: ECF 12, 14

Plaintiff C.D. appeals Defendant Commissioner of Social Security Administration's final administrative decision that found that she was not disabled from October 7, 2022, through October 8, 2024, and denied her applications for disability, disability insurance benefits, and supplement security income (SSI) under Titles II and XVI of the Social Security Act. C.D. argues that the ALJ erred in: (1) rejecting medical opinions, (2) rejecting C.D.'s subjective symptom testimony, (3) assessing C.D.'s residual functional capacity (RFC), and (4) relying on vocational expert (VE) testimony. After reviewing the briefing and administrative record, the Court finds that the ALJ improperly discounted medical opinions and C.D.'s symptom testimony. The Court does not reach the parties' remaining arguments. The Court REMANDS this case for further proceedings.

## I. BACKGROUND

On October 7, 2022, C.D. applied for a period of disability, disability insurance benefits, and SSI, alleging disability beginning June 30, 2022. AR 55. C.D. alleged that

she stopped working June 2, 2022, "due to hearing loss; anxiety; and depression." AR 63. C.D.'s claims were initially denied on February 27, 2023, and again denied upon reconsideration on February 6, 2024. AR 55. On February 26, 2024, C.D. filed a written request for a hearing appealing the decision. *Id.* On appeal, C.D. alleged increased mental health symptoms in "Winter 2023–2024." AR 63. Further, C.D. requested, and the ALJ agreed to, amend the alleged disability onset date to October 7, 2022. AR 55. The hearing was held on August 7, 2024. *Id.* C.D., as well as a vocational expert, testified at the hearing. *Id.*

On October 8, 2024, the ALJ issued an unfavorable decision. AR 52–72. The ALJ found that C.D. has engaged in substantial gainful activity since October 7, 2022. AR 58. The ALJ further found that C.D. has the following severe impairments: posttraumatic stress disorder (PTSD), major depressive disorder (MDD), gender dysphoria, generalized anxiety disorder (GAD), and degenerative joint disease of the right knee. *Id.* The ALJ also assessed C.D.'s hearing loss and irritable bowel syndrome (IBS) but found that they were non-severe because they do not significantly limit C.D.'s ability to do basic work activities. *Id.* The ALJ then concluded that C.D. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.*

In "consideration of the entire record," including C.D.'s symptom testimony and medical opinions, the ALJ found that C.D. has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with some exceptions. AR 62. The exceptions were that C.D. "can frequently climb, balance . . ., stoop, and crouch; can kneel and crawl occasionally; and must avoid concentrated exposure to hazard." *Id.* The ALJ also found that C.D. "can understand, remember, and carry out simple instructions, can interact with supervisors and co-workers occasionally, and can work with the general public occasionally." *Id.* The ALJ then found that C.D. is "unable to perform any past relevant work," but, considering her RFC, age, education, and work experience, there are "jobs that exist in significant numbers in the national economy" that C.D. can perform. AR 70–71.

United States District Court
Northern District of California

Accordingly, the ALJ determined that C.D. "is not disabled" and "has not been under a disability, as defined in the [Act] from October 7, 2022," through October 8, 2024. AR 72.

C.D., having exhausted administrative remedies in this matter, now seeks judicial review by the Court. ECF 1. The parties have filed their respective briefs. ECF 12; ECF 14; ECF 15. The matter was submitted without oral argument. Civil L.R. 16-5. All parties have consented to magistrate judge jurisdiction. ECF 6; ECF 7.

## II. LEGAL STANDARD

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance"). Even when the ALJ commits legal error, the decision must be upheld if the error is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

## III. DISCUSSION

C.D. argues the ALJ erred by: (1) rejecting medical opinions without providing legally sufficient reasons supported by substantial evidence, (2) rejecting C.D.'s subjective symptom testimony without providing specific, clear, and convincing reasons supported by substantial evidence, (3) assessing C.D.'s RFC without accounting for all of C.D.'s relevant limitations, and (4) relying on VE testimony based on an incomplete hypothetical.

United States District Court
Northern District of California

ECF 12 at 1. The Court finds that the ALJ erred in weighing medical opinions and discounting C.D.'s testimony, and that it need not address C.D.'s remaining arguments. The Court therefore remands this case for further proceedings.

**A. The ALJ Erred in Weighing Medical Opinions**

An ALJ must evaluate every medical opinion in evidence and consider various factors in determining the weight to give each opinion. 20 C.F.R. § 404.1527(c). For claims filed after March 27, 2017, as here, the ALJ must explain how he considered the supportability and consistency of a medical opinion to determine the persuasiveness of the opinion. 20 C.F.R § 404.1520c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (quoting 20 C.F.R § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R § 404.1520c(c)(2)). The ALJ may consider other factors such as "the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." *Id*. (citing 20 C.F.R. § 404.1520c(c)(3)(i)–(v)).

Here, C.D. argues that the ALJ did not properly evaluate the medical opinions of: (1) Dr. Katherine Wiebe, Ph.D., (2) Dr. Michelanne Baker, Psy. D., and Cadence McCracken, APCC, and (3) Dr. Ryan Gorton, M.D. ECF 12 at 8. The Court finds that the ALJ erred in discounting Dr. Wiebe's, Dr. Baker's and APCC McCracken's, and Dr. Gorton's medical opinions because she failed to sufficiently address or provide substantial evidence of the required supportability and consistency factors.

**1. The ALJ Erred in Weighing Dr. Wiebe's Opinion**

The ALJ did not find Dr. Wiebe's opinion persuasive because (1) C.D. was referred to Dr. Wiebe by C.D.'s representative, (2) the opinion was based on a single examination, and (3) Dr. Wiebe's assessed limitations were overly restrictive and inconsistent with the

United States District Court
Northern District of California

record as a whole. AR 68. The Court finds that the ALJ erred in weighing Dr. Wiebe's opinion because she did not give proper weight to Dr. Wiebe's relationship with C.D, did not consider supportability, and did not provide substantial evidence of inconsistency.

**a. The ALJ Cannot Rely Solely on Dr. Wiebe's Referral to and Length of Relationship with C.D. to Discount Dr. Wiebe's Opinion**

Both the fact that C.D. was referred to Dr. Wiebe by her counsel and the fact that Dr. Wiebe's opinion was based on a single examination do not show a lack of supportability, as Defendant contends. ECF 14 at 3. Rather, they go towards the purpose and length of Dr. Wiebe's "relationship with the claimant," which cannot by itself be a legitimate basis to discount an opinion. 20 C.F.R. § 404.1520c(b)(2), (c)(3). Indeed, courts have explicitly found that "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it," and "a one-time examination is not, in itself, a legitimate basis to discount an opinion." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998); *R.K. v. Kijakazi*, No. 21-cv-01764-VKD, 2023 WL 2393783, at *7 (N.D. Cal. Mar. 6, 2023). As such, while the ALJ may consider that C.D. was referred to Dr. Wiebe by her counsel and that Dr. Wiebe's opinion was based on a single opinion to discount Dr. Wiebe's opinion, she must also couple that consideration with a discussion of supportability and consistency factors.

**b. The ALJ Did Not Address the Supportability of Dr. Wiebe's Opinion**

Defendant did not argue that the ALJ considered the supportability of Dr. Wiebe's opinion beyond noting that Dr. Wiebe based her assessment on a single examination. ECF 14 at 3. As previously explained, the Court finds that the length of a relationship does not address supportability. *Supra* Section III.A.1.a. And the Court was unable to find any other instances of the ALJ addressing supportability. As such, the ALJ failed to explain the supportability of Dr. Wiebe's opinion, as required by 20 C.F.R. § 404.1520c(b)(2).

United States District Court
Northern District of California

### c. The ALJ Did Not Provide Substantial Evidence to Articulate Inconsistency in Dr. Wiebe's Opinion

In finding that Dr. Wiebe's assessed limitations were overly restrictive and inconsistent with the record as a whole, the ALJ pointed to (1) C.D.'s desire to co-parent and induce lactation, (2) C.D.'s "generally unremarkable" MSEs, (3) Dr. Wiebe's previous assessment that C.D. could manage funds, and (4) C.D.'s lack of ongoing therapy and psychiatric medication until 2024. AR 68. The Court finds that the ALJ erred by not providing substantial evidence of these alleged inconsistencies.

First, the ALJ did not explain how C.D.'s preparation to co-parent a baby by medically inducing lactation contradicts C.D.'s disability. Engagement in ordinary life activities, including childcare, does not necessarily contradict disability without evidence of inconsistency. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (finding that the ALJ erred in not making specific findings regarding how the activity of childcare was inconsistent with a physician's opinion). Here, the ALJ cited portions of the record that simply state C.D.'s intent to pursue lactation induction to potentially co-parent a baby, and the ALJ does not explain how C.D.'s preparation to do so is inconsistent with her assessed limitations. AR 68 (conclusorily stating that C.D.'s preparation was "despite" the assessed limitations); *see e.g.,* AR 1214, 1223. Thus, C.D.'s desire to co-parent and induce lactation is not substantial evidence of inconsistency.

Second, the ALJ mischaracterized and cherry-picked C.D.'s "generally unremarkable" MSEs. AR 68. Seven of these "MSEs" were mental status observations that were conducted as a part of physical examinations (PEs) to treat physical, not mental, concerns, like testosterone and lactation consolation. AR 1041, 1108–09, 1219, 1230, 1238, 1242, 1247. The remaining four MSEs were part of mental health treatment. AR 1226–28, 1232. While the mental status observations in the PEs did note that C.D.'s mood, affect, thought content, and judgment were "normal," the ALJ ignored that the MSE observations found that C.D. had a dysthymic mood, and had antisocial, hopelessness, and suicidal thought content. *Compare, e.g.,* AR 1226, *with* AR 1041. The ALJ also ignored

United States District Court
Northern District of California

other MSEs that contained psychological abnormalities such as anxiety, agitated behavior, and depression. *See, e.g.,* AR 84, 1247, 1427. The ALJ improperly focused on some test results while ignoring the remainder. *See Williams v. Colvin*, No. 14-cv-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.") (citing *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)); *see also Landis v. O'Malley,* No. 23-cv-00881-SKO, 2024 WL 1138183, at *7 (E.D. Cal. Mar. 15, 2024) (finding that the ALJ cherry-picked evidence by ignoring evidence of abnormal MSEs and focused only on nonsevere MSEs conducted during clinic visits to treat physical ailments). Therefore, the MSEs do not constitute substantial evidence of inconsistency.

Third, the ALJ failed to provide an explanation why Dr. Wiebe's finding that C.D. could manage her own funds contradicted Dr. Wiebe's opinion of a mental limitation in understanding, remembering, or applying information and concentration, persistence and maintain pace. AR 68. "The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors,' are correct." *Reddick*, 157 F.3d at 725. Here, the ALJ's statement that C.D.'s ability to manage her own funds contradicted Dr. Wiebe's mental limitation was conclusory, and thus, is not substantial evidence of inconsistency. AR 68 (merely stating that Dr. Wiebe's opinion was "inconsistent" with the limitations).

Fourth, the ALJ improperly relied on C.D.'s alleged lack of therapy and psychiatric medication until 2024 to show inconsistency with Dr. Wiebe's assessed limitations. The Ninth Circuit has "particularly criticized" basing a rejection of mental complaints on a lack of treatment "both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–1300 (9th Cir. 1999) (cleaned up, citing *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir. 1996)). Defendant did not meaningfully argue why it was sufficient for the

United States District Court
Northern District of California

ALJ to base her assessment of Dr. Wiebe on the alleged lack of treatment, especially considering the ALJ agreed that C.D. has severe mental illnesses such as PTSD, MDD, and GAD. AR 58; ECF 14 at 3. As such, the alleged lack of therapy and psychiatric medication until 2024 is not substantial evidence of inconsistency.

In sum, the Court finds that the ALJ erred in discounting Dr. Wiebe's opinion because she incorrectly weighed Dr. Wiebe's purpose and length of relationship, failed to address supportability, and did not present substantial evidence of inconsistency.

**2. The ALJ Erred in Weighing Dr. Baker's and APCC McCracken's Opinion**

The ALJ did not find APCC McCracken and Dr. Baker's MIQ persuasive because it was "overly restrictive and not consistent with the overall record," noting that (1) the MIQ was provided two months after C.D. began therapy with APCC McCracken, (2) APCC McCracken appears to rely heavily on C.D.'s subjective allegations, (3) records show minimal therapy and no evidence of psychiatric medication prior to this assessment, and (4) the MIQ "is not entirely consistent with or supported by" the overall record, which shows generally unremarkable MSEs. AR 69. The Court finds that the ALJ erred by giving improper weight to the length of Dr. Baker/APCC McCracken's relationship with C.D. and not providing substantial evidence of the supportability and consistency factors.

**a. The ALJ Cannot Solely Rely on the Length of the Dr. Baker/APCC McCracken's Relationship With C.D. to Discount Their Medical Opinion**

That the MIQ was provided "only" two months after Plaintiff began therapy with APCC McCracken is insufficient, by itself, to discount APCC McCracken/Dr. Baker's medical opinion. *See supra* Section III.A.1.b.i. This fact does not show a lack of supportability, as Defendant contends. ECF 14 at 4. Rather, it goes towards the length of Dr. Baker and APCC McCracken's "relationship with the claimant," which cannot by itself be a legitimate basis to discount an opinion. 20 C.F.R. § 404.1520c(b)(2), (c)(3).

United States District Court
Northern District of California

**b. The ALJ Did Not Provide Substantial Evidence to Articulate Supportability**

As to supportability, the ALJ improperly relied on APCC McCracken's allegedly heavy reliance on C.D.'s subjective testimony in discounting the MIQ. In psychiatry, "diagnoses will always depend in part on the patient's self-report," and thus, partial reliance on C.D.'s self-reported symptoms is not a reason to reject Dr. Baker/APCC McCracken's opinion. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). This is especially because, as explained below, the ALJ did not properly discount C.D.'s symptoms. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted.") (internal quotation marks and citation omitted). Further, the ALJ did not address that the MIQ was also based on "Psychological Evaluations and Reports/Opinions," not just C.D.'s subjective testimony. AR 1402. As such, the ALJ did not provide substantial evidence to show the supportability of Dr. Baker/APCC McCracken's opinion.

**c. The ALJ Did Not Provide Substantial Evidence to Articulate Inconsistency**

The ALJ states that minimal therapy and no evidence of psychiatric medication prior to this assessment and "generally unremarkable MSEs" show inconsistency with Dr. Baker/APCC McCracken's MIQ. Neither constitute substantial evidence of inconsistency.

The ALJ again erred by relying on using a lack of treatment to discount a medical opinion. *See Supra* Section III.A.1.c. As previously discussed, the Ninth Circuit discourages basing a rejection of mental complaints on a lack of treatment. *See Regennitter*, 166 F.3d at 1299–1300.

Further, the ALJ erred in failing to adequately identify the MSEs findings such that the Court can meaningfully analyze them. AR 69 (citing to 2F, 4F–7F, 10F, 14F, 16F, and 17F, which spans over hundreds of pages). To the extent that the ALJ is referring to the

United States District Court
Northern District of California

same "generally unremarkable" MSEs assessed in her assessment of Dr. Wiebe, the ALJ again improperly mischaracterized and cherry-picked the MSEs. *Supra* Section III.A.1.c.

In sum, the Court finds that the ALJ erred in discounting the opinions of Dr. Baker and APCC McCracken because she failed to present substantial evidence of a lack of supportability and consistency, and evidence of a short relationship with C.D. is not sufficient to discount a medical opinion by itself.

**3. The ALJ Erred in Weighing Dr. Gorton's Opinion**

The ALJ found Dr. Gorton's opinion unpersuasive and "overly restrictive" because it was "not supported by the treatment notes and is not consistent with the claimant's treatment history or testimony." AR 69. The Court finds that the ALJ erred because she did not provide substantial evidence of the supportability and consistency factors.

**a. The ALJ Did Not Provide Substantial Evidence Articulating Supportability**

As to supportability, the ALJ erred by conclusorily stating that Dr. Gorton's opinion is "not supported by treatment notes" and that his assessment "relie[s] heavily" on C.D.'s allegations stated during the August 5, 2024, conversation about permanent disability. AR 69–70.

First, the ALJ erred by not explaining how Dr. Gorton's opinion is not supported by treatment notes. AR 69 (including no citations as to Dr. Gorton's opinion being not supported by treatment notes). The ALJ did not address that Dr. Gorton used medical findings, including hearing loss that requires hearing aids, "MRI that showed an old ACL tear as well as meniscal injury," psycho-emotional elements, and IBS, to support C.D.'s limitations. AR 1410–11. To the extent that the ALJ was discounting Dr. Gorton's opinion because it was based on Dr. Gorton "alleging the claimant needs hearing aids," despite C.D. testifying that "she does not use them" and demonstrating "no difficulty hearing and understanding what was said or asked of her," the Court finds that this would not be substantial evidence of supportability, but rather consistency. AR 69. This applies to any argument about Dr. Gorton's opinions being "not consistent with the claimant's

treatment history or testimony." *See* ECF 14 at 5 (stating that in terms of supportability, Dr. Gorton's opinion was not consistent with C.D.'s treatment history or testimony). The Court addresses any consistency arguments in the next section.

Second, the ALJ errs in failing to adequately explain how reliance on the August 5, 2024, conversation would be unpersuasive or explain how she came to that conclusion. The ALJ only conclusorily stated that Dr. Gorton's assessment relied heavily on C.D.'s August 5, 2024, allegations and cited to an exhibit spanning over 100 pages. AR 70 (citing 6F). Thus, the Court is unable to meaningfully review the ALJ's argument.

**b. The ALJ Did Not Provide Substantial Evidence Articulating Consistency**

The ALJ states that Dr. Gorton's medical opinion was inconsistent with C.D.'s treatment history and testimony because: (1) the records reveal a lack of significant complaints or care for IBS, denials of abdominal pain, intermittent complaints and minimal treatment for knee pain with generally unremarkable PE findings, and no evidence of any significant or chronic gait changes or weakness; and (2) records show the claimant denied tremor inconsistent with Dr. Gorton's manipulative limitations. AR 69–70. The Court also assesses the ALJ's argument that (3) Dr. Gorton's allegation that C.D. needed hearing aids is inconsistent with C.D.'s testimony and ability to hear and understand. AR 69. The Court finds that these do not constitute substantial evidence of inconsistency for Dr. Gorton's entire medical opinion.

First, the ALJ erred by mischaracterizing the record as showing a lack of significant complaints or care for IBS, denials of abdominal pain, intermittent complaints and minimal treatment for knee pain with generally unremarkable physical examination findings and no evidence of any significant or chronic gait changes or weakness. Regarding C.D.'s IBS and abdominal pain, the record shows consistent diagnoses, ongoing symptoms, use of medication such as MiraLAX, and a letter from her primary care doctor requesting dietary accommodation. AR 15–16, 24, 645–46, 655, 672–74, 996, 1088, 1245. The ALJ also appears to ignore C.D.'s consisted reported knee pain, her treatment of using ibuprofen and

watching what she does with her knee, and referral for possible surgical intervention. AR 288, 1101, 1231, 1241, 1333, 1359, 1446, 1518, 1552. Further, there were PE findings that showed tears of the anterior cruciate ligament, medial meniscus, and posterior horn of lateral meniscus, displaced meniscal fragment, tenderness to palpation at both joint lines, a positive McMurray's test, and a grade 2b Lachman test. AR 1102, 1187, 1470. The ALJ additionally failed to address the June 22, 2023, Review of Systems documenting "gait problems and joint swelling," and multiple treatment notes and hearing testimony where C.D. describes difficulty walking and standing due to knee locking, popping out, and swelling. AR 286–89, 1241, 1243, 1333, 1359–60, 1467, 1552.

Second, the ALJ erred by failing to adequately identify where C.D. denied tremor. AR 65 (citing 6F, which spans over a hundred pages). The ALJ also erred by ignoring other parts of the record that consistently noted complaints and diagnoses of tremors dating back to 2022. AR 86, 267, 644–46, 650, 653, 655, 726, 770, 779, 780, 792, 815–16, 819, 821–22, 1037–38, 1214–15, 1233, 1361, 1394, 1520, 1595. The ALJ must consider all relevant medical and other evidence in the case record. *S.M. v. Comm'r of Soc. Sec.,* No. 24-cv-06297-NC, 2025 WL 1527761, at *6 (N.D. Cal. May 29, 2025) (citations omitted).

Third, the ALJ did not err by pointing out inconsistencies between C.D.'s alleged need for hearing aids and C.D.'s testimony and ability to hear and understand without difficulty. AR 69. A reasonable mind would find that having no difficulty hearing and understanding what was said or asked of her would be inconsistent with needing a hearing aid. C.D. points out that she testified she could not use her hearing aids because "they have so much background noise," which is consistent with Dr. Gorton's statement that "hearing aids . . . cause sensitivity to noise." AR 1411. However, the ALJ's consistency argument is that that C.D. does not need hearing aids, not that hearing aids would not cause sensitivity to noise. Further, it does not matter that the ALJ failed to assess other parts of the record that supports C.D.'s alleged hearing loss because having hearing lsos does not equate to needing hearing aids. However, a single discrepancy fails to justify outright rejection of the doctor's opinions. *Evelyn C. v. Berryhill*, No. 18-cv-1294-BHS,

United States District Court
Northern District of California

2019 WL 1055860, at *11 (W.D. Wash. Mar. 5, 2019) (citing *Popa v. Berryhill*, 872 F.3d 901, 906–07) (9th Cir. 2017). Here, the inconsistency only goes towards Dr. Gorton's opinion that C.D. has hearing loss that requires hearing aids.

In sum, the Court finds that the ALJ erred in discounting Dr. Gorton's entire opinion because she failed to present substantial evidence of a lack of supportability and only presented substantial evidence of inconsistency for his opinion that C.D. needed hearing aids.

**B. The ALJ Erred in Weighing C.D.'s Testimony**

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted). In weighing a claimant's credibility, the ALJ may consider their reputation for truthfulness; inconsistencies either in their testimony or between their testimony and their conduct; their daily activities; work record; and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

Here, the Court addresses only whether the ALJ erred in the second step because there is no dispute that the ALJ determined that C.D. has presented objective medical evidence of her underlying impairments and did not allege evidence of malingering. AR 64. The ALJ rejected C.D.'s testimony regarding the "intensity, persistence, and limiting

effects" of her symptoms because they are "inconsistent with the overall record, which shows the claimant's condition was not as debilitating as alleged." AR 64. The ALJ's evaluation was based on four alleged grounds: (1) C.D.'s testimony was inconsistent with the medical evidence, (2) C.D. pursued routine and conservative treatment purportedly inconsistent with the severity of her allegations, (3) C.D. engaged in daily activities, including brief work activity involving kneeling and crouching, inconsistent with disability, and (4) the ALJ permissibly relied on her own observations that C.D. appeared "well put together" at the hearing together with treatment notes reflecting appropriate grooming and presentation. ECF 15 at 4–5. The Court finds that the ALJ erred in evaluating C.D.'s symptom testimony because she did not provide substantial evidence of "specific, clear and convincing reasons" to discredit C.D.

**1. The ALJ Fails to Sufficiently Show that the Record is Inconsistent with C.D.'s Symptom Testimony**

The ALJ states that the record is inconsistent with C.D.'s testimony about "the intensity, persistence, and limiting effects of her symptoms." AR 64. In particular, the ALJ stated that: (1) contrary to C.D.'s allegations that she had an inability to work due to anxiety, depression, and PTSD, the "record shows that C.D.'s expressed priority was gender affirming care, which she has diligently and consistently followed through with" and which C.D. "[did] well" in; (2) contrary to allegations of "debilitating symptoms of depression, anxiety, and PTSD, records show little mental health treatment and on psychiatric medications until 2024;" (3) C.D.'s mental status examinations (MSEs) were generally unremarkable and consistently showed impulse control, insight, and judgment were intact; (4) contrary to C.D.'s reports of "passive suicidal thoughts, records show she has expressed hope and was future oriented, evidenced by her actions;" and (5) C.D.'s allegations of limited ability to stand, walk, sit, and lift, are inconsistent with records lacking evidence of significant or chronic gait changes or weakness. AR 64–66. The Court finds that these alleged inconsistencies do not constitute specific, clear, and convincing reasons to reject C.D.'s symptom testimony.

First, the ALJ erred by not providing clear, convincing reasons to explain how C.D. prioritizing gender affirming care, consistently followed through with such care, and "doing well" after such care, is inconsistent with C.D.'s allegations that she was unable to work due to anxiety, depression, and PTSD. It is not clear on its face, and the ALJ did not explain, how prioritizing gender affirming care or following through with such care is inconsistent with being unable to work due to anxiety, depression, and PTSD. Pointing out that C.D. was "doing well" after breast augmentation surgery and "happy with the glandular development she has achieved" is also not a clear and convincing reason—both are in relation to her gender-affirming care, and not her ability to work or to her work-related functional capacity. AR 65; s*ee Hutsell v. Massanari,* 259 F.3d 707, 712 (8th Cir. 2001) (finding that the Commissioner erroneously relied too heavily on indications in the medical record that the plaintiff was "doing well," because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity"). Further, the ALJ cherry-picked one piece of evidence that noted a "reported reduction in suicidality and depression" and failed to take into consideration evidence of ongoing psychological impairment during this time, including her "dysphoric mood." *See, e.g.,* AR 1124, 1226–28, 1232; *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (stating that an ALJ errs by selectively relying on isolated instances of improvement while ignoring evidence of ongoing impairment). Defendant did not address this argument in its brief. ECF 12.

Second, the ALJ erred by not providing clear, convincing reasons that C.D.'s allegations that she could not work due to mental issues are inconsistent with records showing little mental health treatment and psychiatric medications until 2024. AR 65. While the ALJ may consider LCSW's notes stating the frequency of treatment, she may not do so "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints" in compliance of SSR 16-3p (section 2.d.). The ALJ failed to do so despite documented mental health issues in the record. *Regennitter*, 166 F.3d at 1299. Because the ALJ did not address

whether the gap in mental healthcare was unexplained and the medical records suggest an explanation related to the severity of C.D.'s complaints, the ALJ's reliance on this gap is not a specific, clear and convincing reason for his credibility determination. *See J.M. v. Saul,* No. 19-cv-04908-JCS, 2021 WL 858369, at *13 (N.D. Cal. Mar. 7, 2021).

Third, the ALJ erred by not specifically "identify[ing] the testimony that was not credible" with the "generally unremarkable" MSEs. *Treichler*, 775 F.3d at 1103 (quoting *Reddick*, 157 F.3d at 722). The ALJ did not identify which part of C.D.'s testimony was inconsistent with the MSEs, conclusorily stating that the MSEs were inconsistent with "claimant's allegations." AR 65. The Court cannot correct the error by retroactively piecing together medical evidence identified by the ALJ with conflicting claimant testimony independently identified by the Court. *Jessica B. v. Comm'r of Soc. Sec.*, No. 18-cv-3074-TOR, 2019 WL 850954, at *9 (E.D. Wash. Jan. 30, 2019) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493-94 (9th Cir. 2015)). The ALJ further erred by failing to adequately identify the MSEs findings. AR 65 (generally citing 2F, 4F–9F, 10F, 16F, and 17F, which spans over hundreds of pages). Regardless, the Court notes that the ALJ appears to continue to mischaracterize and cherry-pick the MSEs findings. *See supra* Section III.A.1.c.

Fourth, the ALJ erred by not providing clear, convincing reasons that C.D.'s allegations of "passive suicidal thoughts" were inconsistent with records showing that she had expressed hope and was future oriented. AR 65. "Mental-health evidence must be evaluated in the overall diagnostic context, and isolated notations such as being future oriented do not contradict ongoing severe symptoms." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (quotations omitted). And here, even if there may be portions of the record that describe C.D. as more hopeful, when read as a whole, the record shows many instances of passive suicidal ideation over many years. AR 630, 1168–70, 1226, 1228, 1234, 1329, 1331, 1334, 1341, 1402, 1416, 1496, 1512, 1514.

Fifth, the ALJ cannot solely relying on objective medical evidence to show that C.D.'s allegations of a limited ability to stand, walk, sit, and lift, were inconsistent with a

United States District Court
Northern District of California

lack of evidence of significant or chronic gait changes or weakness. AR 66. An ALJ may not make an adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). While the ALJ did offer other rationales to discount C.D.'s allegations of the severity of her knee pain, as further explained below, those were insufficient to discount C.D.'s testimony. *Infra* Section III.B.2, 3.

**2. The ALJ Failed to Consider Why C.D. Did Not Seek Treatment Consistent with Her Symptoms**

The ALJ then argues that C.D.'s testimony should be discounted because C.D. engaged in routine and conservative treatment incommensurate with her alleged level of impairment. ECF 14 (citing AR 63–66). Specifically, the ALJ points out an inconsistency because: (1) the records lack evidence of reports or treatment of her knee pain between June 2023 and July 2024, (2) C.D. testified that she had not had any treatment for her knee in the last five years, and (3) C.D. did not mentioning possibly needing surgery until she had a "conversation about permanent disability" two days before the August 2024 hearing. AR 66 (citing 7F/32, 15F/2, 17F/36).

As we stated before, while the ALJ may consider frequency of treatment, if she does so, she must also consider "possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints" in compliance of SSR 16-3p (section 2.d.). Further, "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)). Here, the ALJ did not consider any reasons why C.D. did not seek treatment consistent with the degree of her complaints. For example, she did not consider that her physical therapist did not "want to repair it because [C.D.] is not a sports person" and that she declined surgery because her it could lead to arthritis and potentially necessitate a knee replacement. AR 287.

United States District Court
Northern District of California

**3. The ALJ Failed to Show That Her Previous Job Required Crouching and Kneeling**

The ALJ then stated that C.D.'s work doing bike repairs for several months would require her to crouch and kneel, inconsistent with her disabling knee pain. AR 66. The ALJ erred in speculating without evidentiary support that the job required kneeling or crouching. AR 66 (only generally citing "Hearing testimony" generally). The ALJ also failed to address C.D.'s testimony that she worked for "only a couple of months" and the job "didn't work out." AR 283. A brief, unsuccessful work attempt does not undermine symptom testimony, and claimants may not be penalized for attempting to work despite their impairments. *Lingenfelter*, 504 F.3d at 1038 ("[A] nine week unsuccessful work attempt is surely not a clear and convincing reason for finding that a claimant is not credible regarding the severity of his impairment.").

**4. The ALJ Failed to Explain How Her Observations Contradicted C.D.'s Testimony About Grooming**

The ALJ relied on her own observations show that C.D. appeared well put together at the hearing together with treatment notes reflecting appropriate grooming and presentation to discount C.D.'s allegations of difficulties with personal hygiene. ECF 14 at 11. The ALJ is allowed to consider "observations by our employees and other persons." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). However, the ALJ erred by not explaining how C.D.'s testimony is contradicted by occasional observations of good grooming. C.D. testifies that she must "mentally force" herself to shower and may go weeks without doing so and "there is times that [C.D.] can't [put makeup on and do [her]nails." AR 291. She will shower to, for example, "go[] out on a date" because she does not "want to smell bad," but otherwise "basically" stays in her apartment. *Id.* On this record, it is not clear and convincing that occasional observation of good grooming while C.D. is out of the house contradicts C.D.'s description of her hygiene.

In sum, the ALJ did not provide specific, clear, and convincing evidence necessary to discount C.D.'s subjective pain testimony.

**C. The Court Does Not Reach the ALJ's RFC Determination or Use of VE Testimony**

The Court does not reach the parties' remaining arguments on the ALJ's RFC determination and VE testimony. The ALJ will need to reassess her RFC determination, which was in part based on the ALJ's assessment of both medical opinions and C.D.'s allegations. *See DeVries v. Comm'r of Soc. Sec.*, No. 18-cv-02824-VKD, 2019 WL 4839991, at *18 (N.D. Cal. Sept. 30, 2019) (listing cases where the court vacated the ALJ's RFC determination where ALJ failed to give legally sufficient reasons for rejecting aspects of medical opinions and claimant testimony). The ALJ will also therefore need to call a new VE, as the VE's testimony is premised on a hypothetical that stems from the RFC determination. *Ryan L. v. Kijakazi*, No. 20-cv-05163-JAG, 2023 WL 2705842, at *8 (E.D. Wash. Mar. 29, 2023).

**D. The Court Remands for Further Proceedings**

The Court remands for further proceedings. C.D. argues that the Court should remand for an award of benefits. A remand for an award of benefits is appropriate where: (1) the record is fully developed and further proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting medical opinion evidence or symptom testimony; and (3) crediting the improperly rejected evidence as true would require a finding of disability. *Garrison*, 759 F.3d at 1020–21. Here, the Court finds that the ALJ did not properly assess the medical opinions or C.D's symptom allegations, in part because the ALJ did not consider all relevant factors. This results in the necessary reassessment of the ALJ's RFC determination and new VE hypothetical and testimony. Additional proceedings would allow the ALJ to consider all relevant factors and conduct additional investigation or explanation. *Treichler,* 775 F.3d at 1099. Thus, the "proper course" is to remand for further proceedings. *Id.*

On remand, the ALJ shall reassess (1) Dr. Wiebe's opinion, (2) Dr. Baker/APCC McCracken's opinion, (3) Dr. Gorton's opinion, (4) C.D.'s symptom testimony, and (5) C.D.'s RFC, as appropriate. The ALJ will also make a new step five determination.

United States District Court
Northern District of California

## IV. CONCLUSION

Based on the foregoing, the Court REMANDS this case for further administrative proceedings consistent with this order. The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: August 21, 2026

NATHANAEL M. COUSINS
Chief United States Magistrate Judge